UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KYLE SARGIS, on behalf of himself and all similarly situated employees,<br><br>Plaintiff,<br><br>-against-<br><br>THE BONNIE BRIAR COUNTRY CLUB, INC.; BONNIE BRIAR SYNDICATE, INC.; JOE CONDOMITTI GOLF SHOP LLC; FAME GOLF, LLC; JOSEPH "JOE" CONDOMITTI; JAMES TILLA; and JOHN DOES 1-10,<br><br>Defendants. | Case no.:<br><br>**COMPLAINT**<br><br>**FLSA COLLECTIVE ACTION AND RULE 23 CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Kyle Sargis, by his attorneys, alleges as follows:

## 1. NATURE OF THE ACTION

1. This is an individual, collective, and class wage-and-hour action to recover unpaid minimum wages, overtime wages, spread-of-hours pay, call-in/reporting pay, uniform-related wages and reimbursements, statutory damages, liquidated damages, interest, attorneys' fees, and costs under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and the New York Labor Law ("NYLL").

## 2. JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction over Plaintiff's FLSA claims under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

3. This Court has supplemental jurisdiction over Plaintiff's NYLL claims under 28 U.S.C. § 1367 because those claims arise from the same facts as the FLSA claims.

4. Venue is proper in this District under 28 U.S.C. § 1391 because Defendants employed Plaintiff in Westchester County, New York, and the events giving rise to the claims occurred in this District.

## 3. PARTIES

5. Plaintiff Kyle Sargis is an individual who worked for Defendants as a golf caddie and golf-course worker from approximately March 29, 2022 through April 2024.

6. Defendant The Bonnie Briar Country Club, Inc. is a New York entity operating a country club and golf course at 808 Weaver Street, Larchmont, New York.

7. Defendant Bonnie Briar Syndicate, Inc. is a New York business corporation located at 808 Weaver Street, Larchmont, New York, and, upon information and belief, owned, operated, managed, controlled, or benefited from the Club premises and golf operations.

8. Defendant Joe Condomitti Golf Shop LLC is a New York limited liability company located at 808 Weaver Street, Larchmont, New York, and, upon information and belief, operated golf-shop, golf, caddie, outing, or related services at Bonnie Briar.

9. Defendant FAME Golf, LLC is a New York limited liability company associated with 808 Weaver Street, Larchmont, New York, and, upon information and belief, operated or benefited from golf-related services at Bonnie Briar.

10. Defendant Joseph "Joe" Condomitti is an individual who, upon information and belief, owned, managed, operated, or controlled Joe Condomitti Golf Shop LLC and/or golf operations at Bonnie Briar.

11. Condomitti hired Plaintiff on or about March 29, 2022, supervised Plaintiff's work, controlled Plaintiff's working conditions, and fired Plaintiff.

12. Defendant James Tilla is an individual who, upon information and belief, scheduled caddies, assigned caddie work, controlled reporting and waiting time, and exercised operational control over Plaintiff's employment.

13. John Does 1-10 are presently unknown owners, officers, managers, head golf professionals, caddie masters, payroll decisionmakers, and related entities that exercised control over Plaintiff's work, pay, schedules, assignments, records, or employment conditions.

14. At all relevant times, Defendants were Plaintiff's employers within the meaning of the FLSA and NYLL.

15. Defendants acted directly and indirectly in the interest of one another with respect to Plaintiff's employment.

16. Defendants jointly employed Plaintiff, shared control over his work, benefited from his labor, and are jointly and severally liable.

17. Defendants constituted an enterprise engaged in commerce within the meaning of the FLSA.

18. Upon information and belief, Defendants had annual gross volume of sales made or business done of at least $500,000 during the relevant period.

19. Plaintiff also was individually engaged in commerce because his work involved goods, equipment, carts, golf supplies, payment systems, communications, and materials that moved in interstate commerce.

## 4. <u>FACTUAL ALLEGATIONS</u>

20. Defendants hired Plaintiff as a golf caddie on or about March 29, 2022.

21. Plaintiff worked for Defendants through approximately April 2024, when he worked one final day and was terminated.

22. Plaintiff generally reported to work at or about 7:30 a.m.

23. Plaintiff regularly remained at work until approximately 6:00 p.m. or 6:30 p.m., and sometimes later.

24. Plaintiff regularly worked days with a spread of hours exceeding 10 hours.

25. Plaintiff regularly worked five days per week and sometimes six days per week.

26. Plaintiff regularly worked more than 40 hours in a workweek.

27. A typical five-day week was approximately 52.5 to 55 hours.

28. A typical six-day week was approximately 63 to 66 hours.

29. Defendants required Plaintiff to report to the Club and wait for available caddie work.

30. Defendants controlled whether Plaintiff received a loop or assignment after reporting.

31. Plaintiff's waiting time was for Defendants' benefit and was part of his workday.

32. Defendants required Plaintiff to wear a uniform.

33. Defendants' head golf professional and management supervised Plaintiff and other caddies, including by driving around the course to observe and control caddie work.

34. Condomitti hired Plaintiff and later fired him.

35. Tilla scheduled Plaintiff and other caddies.

36. Defendants set, communicated, or controlled caddie payment expectations, including member-required minimum payments of approximately $100 and outing minimums of approximately $120.

37. Defendants paid Plaintiff no lawful hourly wage.

38. Defendants did not pay Plaintiff at least the federal minimum wage for all hours worked.

39. Defendants did not pay Plaintiff at least the New York minimum wage for all hours worked.

40. Defendants did not pay Plaintiff overtime at one and one-half times his regular rate for hours worked over 40 in a workweek.

41. Defendants did not pay Plaintiff one additional hour of pay at the applicable New York minimum wage for days when his spread of hours exceeded 10 hours.

42. Defendants did not pay Plaintiff call-in/reporting pay for days when he reported as required or permitted and was not paid for at least the minimum required reporting time.

43. Defendants did not provide Plaintiff with a lawful wage notice at hire.

44. Defendants did not provide Plaintiff with accurate wage statements with each payment of wages.

45. Defendants' failure to provide Plaintiff with lawful wage notices and wage statements caused concrete, particularized, and actual injury.

46. Because Defendants did not provide Plaintiff with a lawful wage notice at hire, Plaintiff was not informed in writing of his lawful rate of pay, overtime rate, pay basis, regular payday, employer identity, employer address, employer telephone number, tip allowance, claimed allowances, or the entity or entities responsible for paying his wages.

47. This omission caused concrete harm because Plaintiff worked for a multi-entity golf operation involving the Club, the Syndicate, the Golf Shop, FAME Golf, Condomitti, Tilla, and/or other Doe employers, but was not told which employer or employers were legally responsible for his wages.

48. The lack of a wage notice impaired Plaintiff's ability to identify his employer, understand his lawful wage rate, determine whether Defendants were claiming a tip credit or allowance, determine whether tips or golfer payments were being treated as wages, and promptly challenge Defendants' unlawful pay practices.

49. Defendants' failure to provide accurate wage statements with each payment of wages caused additional concrete harm because Plaintiff was not given written records showing the dates

worked, hours worked, rates of pay, overtime hours, gross wages, deductions, allowances, tip credits, employer identity, or net wages.

50. The absence of wage statements concealed Defendants' underpayments, delayed Plaintiff's discovery of his wage claims, and impaired his ability to verify his compensation contemporaneously.

51. The wage notice and wage statement violations also caused injury because Plaintiff was denied wage information to which he had a statutory right and that was necessary to understand, verify, and enforce his substantive wage rights.

52. These injuries were not merely technical or procedural. The missing notices and statements caused Plaintiff to lose timely access to wage information, obscured the identity of the responsible employer or employers, impeded his ability to detect and remedy wage theft while employed, and increased the difficulty and expense of pursuing his claims.

53. The same injuries were suffered by members of the NYLL Class who were subject to Defendants' common practices of failing to provide lawful wage notices and wage statements.

54. Defendants did not maintain accurate records of Plaintiff's hours, wages, overtime hours, rates of pay, tip credits, spread-of-hours pay, reporting pay, uniform pay, or deductions.

55. Defendants' violations were willful.

56. Defendants operated an established country club, golf course, golf shop, caddie program, outings program, and related golf services and were responsible for complying with federal and New York wage-and-hour laws.

57. Defendants controlled Plaintiff's hiring, schedules, assignments, reporting time, waiting time, uniform requirements, supervision, non-caddie work, compensation, and termination.

58. Defendants knew Plaintiff performed compensable work because he reported to Defendants' premises, waited for assignments, caddied for members and guests, performed range

and golf-course work, moved and cleaned carts, repaired sod, hand-picked the range, and transported members.

59. Defendants knew Plaintiff worked long days and overtime hours because they scheduled, assigned, observed, supervised, and benefited from his work.

60. Defendants maintained a compensation system under which Plaintiff was paid no regular hourly wages and instead relied on golfer payments, tips, member minimums, outing payments, cash, and/or Venmo payments.

61. Defendants knew or recklessly disregarded that this compensation system did not satisfy their obligations to pay minimum wages, overtime wages, spread-of-hours pay, reporting pay, and wages for non-tipped work.

62. Defendants also failed to maintain accurate time and payroll records and failed to provide lawful wage notices, wage statements, or any written explanation of Plaintiff's wage rates, hours, allowances, or pay calculations.

63. Defendants' violations were knowing, intentional, and/or in reckless disregard of Plaintiff's rights under the FLSA and NYLL.

## 5. COLLECTIVE ACTION ALLEGATIONS

64. Plaintiff brings his FLSA claims as a collective action under 29 U.S.C. § 216(b) on behalf of himself and all similarly situated employees who elect to opt into this action.

65. The FLSA Collective is defined as: All caddies, golf-course workers, golf-shop workers, outing workers, range workers, cart workers, and other similarly situated non-exempt employees who worked for Defendants at Bonnie Briar Country Club at any time during the three years before the filing of this Complaint through final judgment and who were not paid all minimum wages and/or overtime wages required by the FLSA.

66. Plaintiff and the FLSA Collective were similarly situated because they were subject to common policies and practices, including Defendants' policies or practices of failing to pay direct hourly wages, requiring employees to rely on golfer payments or tips, failing to pay overtime, failing to pay for reporting and waiting time, failing to maintain accurate time records, and failing to pay wages for non-caddie work.

67. The claims of Plaintiff and the FLSA Collective arise from the same compensation system and the same decisions by Defendants to treat caddies and related golf workers as unpaid or tip-only workers rather than as employees entitled to minimum wages and overtime wages.

68. Defendants knew or should have known that Plaintiff and the FLSA Collective performed work for Defendants' benefit and were entitled to wages under the FLSA.

69. Plaintiff's claims are typical of the claims of the FLSA Collective because Plaintiff and the Collective were injured by the same unlawful pay practices.

70. Plaintiff will fairly and adequately protect the interests of the FLSA Collective.

71. Court-authorized notice should issue to the FLSA Collective so similarly situated employees may opt into this action.

## 6. RULE 23 CLASS ACTION ALLEGATIONS

72. Plaintiff brings his NYLL claims as a class action under Federal Rule of Civil Procedure 23 on behalf of himself and all similarly situated employees.

73. The NYLL Class is defined as: All caddies, golf-course workers, golf-shop workers, outing workers, range workers, cart workers, and other similarly situated non-exempt employees who worked for Defendants in New York at any time during the six years before the filing of this Complaint through final judgment and who were not paid all wages required by the NYLL.

74. Excluded from the NYLL Class are Defendants, Defendants' owners, officers, directors, legal representatives, agents with managerial authority over wage policies, the Court, Court staff, and any person who timely opts out.

75. The NYLL Class is so numerous that joinder is impracticable. Upon information and belief, Defendants employed numerous caddies and other golf-related workers during the relevant period.

76. Common questions of law and fact predominate over individualized questions, including: a. whether Defendants jointly employed Plaintiff and the NYLL Class; b. whether Defendants failed to pay direct hourly wages; c. whether Defendants unlawfully required employees to rely on tips, golfer payments, member minimums, outing payments, cash, or Venmo instead of wages; d. whether Defendants failed to pay minimum wages; e. whether Defendants failed to pay overtime wages; f. whether Defendants failed to pay for reporting and waiting time; g. whether Defendants failed to pay spread-of-hours pay; h. whether Defendants failed to pay wages for non-caddie work; i. whether Defendants failed to provide lawful wage notices; j. whether Defendants failed to provide lawful wage statements; k. whether Defendants failed to maintain accurate time and payroll records; and l. whether Defendants' violations were willful.

77. Plaintiff's claims are typical of the claims of the NYLL Class because Plaintiff and the Class were subject to the same unlawful compensation policies and were injured in the same manner.

78. Plaintiff will fairly and adequately protect the interests of the NYLL Class and has no interests antagonistic to the Class.

79. Plaintiff's counsel are experienced in wage-and-hour litigation and will fairly and adequately represent the NYLL Class.

80. A class action is superior to other available methods because the individual damages of many Class members are modest compared to the burden and expense of individual litigation, and class treatment will efficiently resolve common issues arising from Defendants' uniform pay practices.

81. Class treatment is appropriate under Rule 23 because common questions predominate over individual questions and because a class action is the superior method for fairly and efficiently adjudicating the NYLL claims.

## 7. CAUSES OF ACTION

### 7.1. FLSA Minimum Wage

82. Plaintiff repeats and realleges the foregoing paragraphs.

83. Defendants were required to pay Plaintiff at least the federal minimum wage for each hour worked.

84. Defendants paid Plaintiff no direct hourly wage and unlawfully required him to rely on customer payments, tips, gratuities, and occasional outing payments.

85. Defendants did not satisfy the requirements for taking any tip credit against the federal minimum wage.

86. Defendants failed to pay Plaintiff the minimum wages required by the FLSA.

87. Defendants are liable for unpaid minimum wages, liquidated damages, attorneys' fees, and costs.

### 7.2. FLSA Overtime

88. Plaintiff repeats and realleges the foregoing paragraphs.

89. Plaintiff regularly worked more than 40 hours per week.

90. Defendants failed to pay Plaintiff overtime compensation at one and one-half times his regular rate for hours worked over 40 in a workweek.

91. Defendants' violations were willful.

92. Defendants are liable for unpaid overtime wages, liquidated damages, attorneys' fees, and costs.

**7.3. <u>NYLL Minimum Wage</u>**

93. Plaintiff repeats and realleges the foregoing paragraphs.

94. Defendants were required to pay Plaintiff the applicable New York minimum wage for each hour worked.

95. The applicable New York minimum wage in Westchester County was $15.00 per hour during 2022 and 2023 and $16.00 per hour beginning January 1, 2024.

96. Defendants paid Plaintiff no lawful hourly wages.

97. Defendants were not entitled to offset Plaintiff's wages by tips, gratuities, golfer payments, or outing payments.

98. Defendants were not entitled to offset Plaintiff's wages by tips, gratuities, golfer payments, outing payments, or any claimed tip credit or allowance because Defendants did not satisfy the legal requirements for doing so.

99. Defendants failed to pay Plaintiff all minimum wages due under the NYLL.

100. Defendants are liable for unpaid wages, liquidated damages, prejudgment interest, attorneys' fees, and costs.

**7.4. <u>NYLL Overtime</u>**

101. Plaintiff repeats and realleges the foregoing paragraphs.

102. Defendants were required to pay Plaintiff overtime compensation for hours worked over 40 in a workweek.

103. Plaintiff regularly worked more than 40 hours per week.

104. Defendants failed to pay Plaintiff overtime compensation under the NYLL.

105. Defendants are liable for unpaid overtime wages, liquidated damages, prejudgment interest, attorneys' fees, and costs.

### 7.5. NYLL Spread-of-Hours Pay

106. Plaintiff repeats and realleges the foregoing paragraphs.

107. Plaintiff regularly worked days when the interval between the beginning and end of his workday exceeded 10 hours.

108. Defendants failed to pay Plaintiff one additional hour of pay at the applicable New York minimum wage for each such day.

109. Defendants are liable for unpaid spread-of-hours pay, liquidated damages, prejudgment interest, attorneys' fees, and costs.

### 7.6. NYLL Call-In / Reporting Pay

110. Plaintiff repeats and realleges the foregoing paragraphs.

111. Defendants required or permitted Plaintiff to report to work and wait for assignments.

112. On days when Plaintiff reported to work, Defendants were required to pay him at least the minimum reporting pay required by New York law.

113. Defendants failed to pay Plaintiff required call-in/reporting pay.

114. Defendants are liable for unpaid reporting pay, liquidated damages, prejudgment interest, attorneys' fees, and costs.

### 7.7. NYLL Uniform Pay and Reimbursement

115. Plaintiff repeats and realleges the foregoing paragraphs.

116. Defendants required Plaintiff to wear a uniform.

117. Defendants failed to reimburse Plaintiff for required uniform costs and/or failed to pay required uniform-maintenance amounts.

118. Defendants are liable for uniform-related wages, reimbursements, liquidated damages, prejudgment interest, attorneys' fees, and costs.

### 7.8. NYLL Wage Notice Violations

119. Plaintiff repeats and realleges the foregoing paragraphs.

120. Defendants failed to provide Plaintiff with a wage notice at hire containing his rate of pay, overtime rate, pay basis, regular payday, employer name, employer address, employer phone number, and any allowances claimed as part of the minimum wage.

121. Defendants are liable for statutory damages of $50 per workday, up to $5,000, plus attorneys' fees and costs.

### 7.9. NYLL Wage Statement Violations

122. Plaintiff repeats and realleges the foregoing paragraphs.

123. Defendants failed to provide Plaintiff with accurate wage statements with each payment of wages.

124. Defendants' wage statements, if any, failed to state Plaintiff's hours worked, regular rate, overtime rate, gross wages, deductions, allowances, employer name, employer address, employer phone number, and net wages.

125. Defendants are liable for statutory damages of $250 per workday, up to $5,000, plus attorneys' fees and costs.

## 8. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants, jointly and severally, as follows:

A. unpaid minimum wages under the FLSA and NYLL;

B. unpaid overtime wages under the FLSA and NYLL;

C. unpaid spread-of-hours pay under the NYLL;

D. unpaid call-in/reporting pay under the NYLL;

E. unpaid uniform maintenance pay, uniform-related damages, and uniform reimbursements;

F. unlawfully retained gratuities, service charges, tips, caddie fees, outing payments, and/or golfer payments, to the extent proven;

G. liquidated damages under the FLSA and NYLL;

H. statutory damages for wage notice violations;

I. statutory damages for wage statement violations;

J. prejudgment interest on NYLL damages;

K. post-judgment interest;

L. attorneys' fees and costs;

M. the automatic 15% increase provided by NYLL § 198(4) for judgments unpaid after the statutory period;

N. certification of the FLSA Collective and issuance of court-authorized notice under 29 U.S.C. § 216(b);

O. certification of the NYLL Class under Federal Rule of Civil Procedure 23, appointment of Plaintiff as class representative, and appointment of Plaintiff's counsel as class counsel;

P. leave to amend to name additional defendants identified in discovery; and

Q. such other and further relief as the Court deems just and proper.

**9. <u>JURY DEMAND</u>**

Plaintiff demands a trial by jury on all issues so triable.

Dated: Astoria, New York
April 30, 2026

Respectfully submitted,

*/s/ Clifford Tucker*

Clifford Tucker, Esq.
Sacco & Fillas LLP
31-19 Newtown Ave., 7th Floor
Astoria, New York 11102
Phone: 718-269-2243
CTucker@SaccoFillas.com

## CONSENT TO JOIN ACTION

## REQUEST TO BECOME A PARTY-PLAINTIFF

I hereby consent to be a party plaintiff in an action to recover unpaid wages, including but not limited to minimum wages, overtime, spread of hours, gratuities, statutory and liquidated damages, attorney's fees, costs, interest, and other sums owing to me and other similarly situated employees under each and every federal and state wage and hour law, rule and regulation which may include but is not limited to the federal Fair Labor Standards Act, New York Labor Law, New Jersey Wage and Hour Law, and any other applicable law, rule, regulation, and wage order. If I am not a named Plaintiff(s), I authorized the named Plaintiffs to make all decisions involving this litigation and settle this action on behalf. I hereby authorize Sacco & Fillas LLP to pursue any claims I may have, including such litigation as may be necessary, and I hereby consent, agree, and option to become a plaintiff herein and to be bound by any settlement of this action or adjudication by the Court.

Name: Kyle Sargis

Legal Representative:
Sacco & Fillas LLP
3119 Newtown Ave, Seventh Floor
Astoria, NY 11102

Signature: ______________ Date: September 2, 2025